IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUAN FINCH, JR. and MARK TOIGO, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 1:22-cv-01508<br>) |
| MARIO TRETO, JR., in his official capacity as Acting Secretary of the Illinois Department of Financial and Professional Regulation, | ) **Injunctive Relief Sought**<br>)<br>)<br>)<br>) |
| Defendant. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiffs, JUAN FINCH, JR. and MARK TOIGO, are each aspiring owners of "Conditional Adult Use Dispensing Organization Licenses" under 410 ILCS 705 / Cannabis Regulation and Tax Act (the "Act"). This is a conditional license that paves the way for the owner to sell cannabis in Illinois for recreational use.

2. In 2021, the Illinois Department of Financial and Professional Regulation (the "Department") allotted 185 conditional licenses in three separate lotteries. That process, however, unconstitutionally discriminated against Plaintiffs on the basis of their out-of-state residency in violation of the dormant Commerce Clause of the United States Constitution. *See* Art. I, § 8, cl. 3. Specifically, nonresident Plaintiffs were categorically barred from participating in two of those lotteries and fatally disadvantaged from participating in the third. Because the process unconstitutionally discriminated against nonresidents in favor of State residents, Plaintiffs seek to enjoin the Department from issuing any of those 185 licenses, and

for the State to cure its constitutional defects by, first, eliminating the residency requirements in Sections 15-30(c)(5) and (c)(8), and, second, rerunning the licensing process.

3. Plaintiffs also seek to enjoin the State's residency requirement under 410 ILCS 705/30 so that they may apply for the 55 "Conditional Adult Use Dispensing Organization Licenses" that Governor Pritzker just announced last week will be issued sometime later this year.

## JURISDICTION AND VENUE

4. This Court has federal-question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the residency requirements under 410 ILCS 705/15-30(c) violate the United States Constitution.

5. This Court also has jurisdiction over this action pursuant to 42 U.S.C. § 1983, which grants a private right of action to any person within the jurisdiction of the United States whose rights, privileges, or immunities have been deprived by, among other things, any person acting under color of state law.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant resides and works in the State and in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

7. Plaintiff Juan Finch, Jr. has been a resident of Chicago since December 2021. He intends to live and work in Chicago for the long run with the goal of owning his own cannabis store in the city. In 2019, he attempted to apply for an Illinois

"Conditional Adult Use Dispensing Organization License," but his attempt was futile because he did not live in Illinois. As an active-duty sailor in the United States Navy, he lived in California at that time. He intends to submit an application for the upcoming 2022 lottery for a conditional dispensary license, but once again, his application will be doomed, for all intents and purposes, because he has not been an Illinois resident long enough to obtain the benefits provided to long-term Illinois residents in the State's licensing scheme.

8. Plaintiff Mark Toigo, who resides in Pennsylvania, has been an investor in cannabis-related businesses for years. He desires to obtain an Illinois "Conditional Adult Use Dispensing Organization License." He also aspires to become a majority shareholder of an Illinois cannabis company. However, because he is not an Illinois resident, Mr. Toigo was not able to participate in any of the lotteries for conditional licenses or to become a majority shareholder of an Illinois cannabis-dispensing company.

9. Defendant Mario Treto, Jr. is the Acting Secretary of the Illinois Department of Financial and Professional Regulation (the "Department"). In this role, he is responsible for issuing and supervising licenses to cannabis-dispensing organizations within Illinois. *See* 410 ILCS 705/1-10, 5-15. He is also entrusted with, among other things, carrying out the processes for issuing "Conditional Adult Use Dispensing Organization Licenses" through assorted lotteries, which entitle the winners to ultimately operate cannabis dispensaries within Illinois that sell marijuana for recreational use. *See id.* at §§ 15-25, 15-30, 15-35, 15.35.10. Plaintiffs

seek injunctive and declaratory relief against Mr. Treto in his official capacity to enjoin an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908).

## BACKGROUND

10. In 2019, Governor Pritzker signed into law HB 1438, which ended the State's nonmedical cannabis prohibition and replaced it with a system to regulate recreational cannabis for adult use. In addition to legalizing marijuana use for both resident and nonresident adults, the Cannabis Regulation and Tax Act, 410 ILCS 705 *et seq.*, creates a complex licensing scheme for private firms to grow and sell marijuana. This case concerns the "Conditional Adult Use Dispensing Organization Licenses" that the Department issued in three separate lotteries in 2021 and that the Department will issue in another lottery sometime later this year.

11. The Act creates a competitive dispensary licensing process whereby only certain applicants can qualify for a "Conditional Adult Use Dispensing Organization License."

12. A "Conditional Adult Use Dispensing Organization License" is a "contingent license awarded to applicants for an Adult Use Dispensing Organization License that reserves the right" for the person to eventually obtain an "Adult Use Dispensing Organization License." 410 ILCS 705/1-10. An "Adult Use Dispensing Organization License," in turn, means "a license issued by the Department of Financial and Professional Regulation that permits a person to act as a dispensing organization under this Act." *Id.* And a "Dispensing organization" is a "facility operated by an organization or business that is licensed by the Department of

4

Financial and Professional Regulation to acquire cannabis . . . for the purpose of selling or dispensing cannabis" products. *Id*. In simpler terms, a person hoping to legally sell cannabis needs a "conditional" license from the Department before receiving an actual license to do so.

13. The Department is responsible for "the oversight and registration of dispensing organizations and agents," and "may suspend or revoke" cannabis-dispensary licenses. *Id.* at § 5-15. The Department is also responsible for administering conditional cannabis licenses, which it does through a lottery system. *Id.* at §§ 15-25, 15-30, 15-35, 15.35.10.

14. To qualify in a lottery for a conditional dispensing license, the applicant must file an application, pay a nonrefundable fee, and score high enough on the application to actually "qualify" in the lottery.

15. The Act refers to those who are qualified to participate in some of the lotteries as either "Qualifying Applicant[s]" or "Qualifying Social Equity Justice Involved Applicant[s]," which both have the same "qualifying" minimum threshold. *Id.* at § 1-10. A "Qualifying Applicant" means an applicant "that submitted an application pursuant to Section 15-30 that received at least 85% of 250 application points available under Section 15-30." *Id.* A "Qualifying Social Equity Justice Involved Applicant" means "an applicant that submitted an application pursuant to Section 15-30 that received at least 85% of 250 application points under Section 15-30" *and* meets the criteria of "Social Equity Applicant." *Id.* "Qualifying applicants," then, need more than 212 points to participate in some of the lotteries.

5

16. Applicants receive their points based on both binary metrics (*e.g.,* Illinois resident status) and subjective factors (*e.g.*, quality of the business plan). More precisely, the "Department will award up to 250 points" for a dispensing license based on: (1) the suitability of an employee training plan (15 points); (2) security and recordkeeping (65 points); (3) the business plan, financials, and operating and floor plan (65 points); (4) "[k]nowledge and [e]xperience" (30 points); (5) "[s]tatus as a Social Equity Applicant" (50 points); (6) labor and employment practices (5 points); (7) the environmental plan (5 points); (8) status as an "Illinois owner" (5 points); (9) status as a veteran (5 points); (10) the diversity plan (5 points); and (11) a plan to engage with the community (2 bonus points). *Id.* at §§ 15-30(c), 15-30(d).

17. Importantly, out-of-state residents cannot qualify for 55 of the 250 points, because the State reserves 5 points for "Illinois owner[s]" and 50 points for "social equity" applicants, who must also be "Illinois resident[s]" in addition to satisfying other criteria. *Id.* at §§ 1-10, 15-30 (c)(5), 15-30(c)(8). Both an "Illinois owner" and a "Social Equity Applicant" further require "51% ownership and control" by someone who is an Illinois resident. *Id.*

18. There is a minimum residency period, too. An "Illinois owner" is someone "who can prove residency in each of the past 5 years." *Id.* at § 15-30(c)(8). A "Social Equity Applicant" is someone who has "resided for at least 5 of the preceding 10 years in a Disproportionally Impacted Area," which are areas within Illinois only.

19. For nonresidents, thus, the maximum number of points they can earn on their applications is 195 out of 250 (or 197 out of 252, including bonus points).

6

20. The State held three lotteries in 2021 to issue 185 conditional dispensary licenses.

21. The first lottery for 55 conditional licenses took place on July 29, 2021 (the "July Lottery"). By statute, only those applicants who received at least "85% of the 250 application points," or 213 points, were eligible to participate.[1] *See id.* at §§ 1-10, 15-35(a) ("Qualifying Applicant Lottery for Conditional Adult Use Dispensing Organization Licenses.").

22. The second lottery for 55 conditional licenses took place on August 5, 2021 (the "Social Equity Lottery"). By statute, only those applicants who received at least "85% of the 250 application points," and who lived in a particular area within Illinois, were eligible to participate. *See id.* at §§ 1-10, 15-35.10(a) ("Social Equity Justice Involved Lottery for Conditional Adult Use Dispensing Organization Licenses.").

23. The third lottery for 75 conditional licenses took place on August 19, 2021 (the "August Lottery"). Only those applicants who received a "top scor[e]" on their applications could participate.[2] The top score in the August Lottery, in turn, ended up being a perfect score, including bonus points—252 out of 252.[3] *See id.* at § 15-25.

24. Consequently, to participate in one of the three lotteries held in 2021 for

---

[1] *See also Gov. Pritzker Announces Lottery Dates for 185 Cannabis Dispensary Licenses and Notifies Over 200 Awardees of Craft Grow, Infusers, and Transporter Licenses*, Illinois.Gov (July 15, 2021), https://www.illinois.gov/news/press-release.23577.html.
[2] *See id.*
[3] *See Pritzker Administration Announces Results Lottery to Award 75 Conditional Adult-Use Cannabis Dispensing Organization Licenses*, Ill. Dept. of Fin. and Prof. Reg. (Aug. 19, 2021), https://tinyurl.com/4h3vc5zr.

7

the 185 conditional dispensary licenses, the applicant needed either 213 points or a perfect score.

25. Although the Department has *allocated* 185 conditional licenses from the three lotteries held in 2021, no licenses have been affirmatively *issued*, because of state-court litigation related to different issues than those raised here. On July 28, 2021, a state court sitting in Cook County issued an order that "stay[ed] the granting of licenses" "until further order of court."[4]

26. On October 18, 2021, the Illinois Supreme Court ordered consolidation of several relevant licensure cases.[5] The consolidated matters are now before the Honorable Celia G. Gamrath of the Cook County Circuit Court, who has recently indicated, according to the press, that a final resolution of the 185 licenses, including lifting the stay, **could happen at any moment after March 23, 2022**.[6]

27. Just last week, on March 15, 2022, Governor Pritzker announced that the State plans to issue 55 more conditional licenses this year.[7] Although the details of the application process are still being worked out, the State has implied that only "Social Equity Applicants" or comparable individuals will be able to participate. This

---

[4] *See* Exhibit C (July 28, 2021, Stay Order) to Plaintiff WAH's Response In Objection To Defendants-Petitioners' Motion To Transfer And Consolidate Cases Under Illinois Supreme Court Rule 384 (Oct. 5, 2021), https://tinyurl.com/3n8m3875.

[5] *See* Order, *High Haven Dispensary, LLC v. Ill. Dept. of Fin. and Prof. Reg.*, No. 127703 (Ill. Sup. Ct. Oct. 18, 2021), https://www.law360.com/articles/1432853/attachments/0.

[6] As has been reported, Judge Gamrath scheduled a "late March" conference "to begin planning for a settlement conference that would result in releasing the licenses to awarded winners and possibly provide additional licenses to 33 applicants who have filed complaints against the license award process." Mike Fourcher, *Illinois supercase holding up 185 dispensary licenses lumbers towards a possible late spring settlement*, Grown In (Feb. 28, 2022), https://tinyurl.com/mr3bfscc.

[7] *See Pritzker Administration to Propose New, Simplified Approach to Cannabis Dispensary Applications*, IDFPR (Mar. 15, 2022), https://tinyurl.com/mpa6hsn4.

8

means that only Illinois residents may be able to participate in this lottery.

## CAUSES OF ACTION

### COUNT I – UNITED STATES CONSTITUTION, ARTICLE I, § 8, CLAUSE 3
### DORMANT COMMERCE CLAUSE
### 42 U.S.C. § 1983

28. Plaintiffs incorporate all preceding paragraphs by reference.

29. The United States Constitution prohibits state laws that discriminate against citizens of other states. "[D]iscrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Ore. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). "If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Id*. A state law that facially discriminates against interstate commerce also "invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Hughes v. Okla.*, 441 U.S. 322, 337 (1979).

30. Acting under color of state law, Defendant discriminated against Plaintiffs by precluding them from participating in the July Lottery and the Social Equity Lottery solely because they are nonresidents.

31. Defendant further discriminated against Plaintiffs by precluding them from participating in the August Lottery, which required a "top score." Plaintiffs could not compete on equal footing because they automatically lost 55 points due to their out-of-state residency.

32. Defendant continues to discriminate against Plaintiffs by barring them from participating in the 2022 lottery, which, as Governor Pritzker indicated on

9

March 15, 2022, requires long-term Illinois residency that Plaintiffs cannot satisfy.

33. Specifically, Plaintiff Finch attempted to apply for a "Conditional Adult Use Dispensing Organization License" in 2019, but quickly discovered that his application was futile because he lived in California at the time. Acting under color of state law, Defendant automatically deprived him 55 of 250 points available on his application—and then ran the July Lottery and the Social Equity Lottery in which only those who scored more than 212 points could participate. Nor could Finch participate on equal footing in the August Lottery that required a "top scor[e]" (including bonus points) of 252 out of 252—a result impossible for Finch to have achieved.

34. Similarly, Plaintiff Toigo is an out-of-state resident, living in Pennsylvania. He wanted to and would have participated in the 2021 lotteries, but he knew that his application would be futile. More, applicants must submit a $5,000 nonrefundable fee, unless they are "Social Equity Applicants," in which case an applicant must submit a nonrefundable fee of $2,500. Toigo reasonably saw no utility in spending thousands of dollars on an application that would inevitably fail.

35. Both Plaintiffs would participate in the 2022 lottery just announced by the Governor. Yet, once again, they are unable to do so because of their residency. As to Finch, although he is now a four-month-long Illinois resident, Sections 1-10 and 15-30 of the Act permit only long-term residents of "at least 5 of the preceding 10 years" or "each of the past 5 years," respectively, to participate. He cannot satisfy the durational requirements due to his prior nonresident status.

36. Acting under color of state law, Defendant therefore explicitly discriminated against Plaintiffs, forbidding them from participating in interstate commerce here in Illinois in violation of their rights under the United States Constitution. The harm is ongoing as Plaintiffs are unable to participate in the 2022 lottery due to their residency status.

37. Defendant's discrimination is not narrowly tailored to serve a legitimate local purpose. This discrimination, in fact, has no legitimate local purpose at all, and the stated rationale in the Act for awarding particular benefits to social equity applicants—*i.e.*, to remedy harms resulting from disproportionate enforcement of cannabis-related laws—applies equally to Americans in *all* states, and thus can be achieved without discriminating against nonresidents.

## COUNT II – DECLARATORY JUDGMENT ACT
## 28 U.S.C. § 2201

38. Plaintiffs incorporate paragraphs 1–27, 30–37 by reference.

39. Plaintiffs assert that the residency requirements in 410 ILCS 705/15(c)(5) and (c)(8) violate the dormant Commerce Clause of the United States Constitution. Section 15-30(c) is therefore unenforceable.

40. An actual controversy exists between Plaintiffs and Defendant as to whether the Section 15-30(c) is enforceable.

41. An actual controversy exists between Plaintiffs and Defendant as to whether Defendant conducted constitutionally permissible lotteries that purported to award 185 Conditional Adult Use Dispensing Organization Licenses in 2021.

42. Plaintiffs would have applied for "Conditional Adult Use Dispensing Organization Licenses," and/or become majority shareholders of Illinois cannabis companies, but-for Defendant's enforcement of the unconstitutional laws that forbid them from even participating.

43. Injunctive and declaratory relief are needed to resolve this dispute because 410 ILCS 705 violates the United States Constitution and subjects Plaintiffs to serious, concrete, and irreparable injuries.

## PRAYER FOR RELIEF

44. Plaintiffs pray for relief and judgement as follows:

    a. Declaring that the residency requirements in 410 ILCS 705/15(c)(5) and (c)(8) violate the United States Constitution;

    b. Preliminarily and permanently enjoining Defendant from implementing, enforcing, or giving any effect to the residency requirements in 410 ILCS 705/15(c)(5) and (c)(8);

    c. Preliminarily and permanently enjoining Defendant from issuing the 185 "Conditional Adult Use Dispensing Organization Licenses" that were allocated as a result of an unconstitutional process;

    d. Awarding attorneys' fees and costs to Plaintiffs pursuant to 42 U.S.C. § 1988; and

    e. Granting such other and further relief as the Court deems just and proper.

Dated: March 23, 2022

                                  Respectfully submitted,

                                  By: /s/  John Adams

JOHN K. ADAMS (Ill. State Bar No. 6323541)
   *Lead Counsel*
DANIEL D. BIRK (Ill. State Bar No. 6302412)
JOHN D. TRIPOLI (Cal. State Bar No. 262542)
EIMER STAHL LLP
224 South Michigan Ave.
Suite 1100
Chicago, IL 60604
(312) 660-7600
jadams@eimerstahl.com

*Counsel for Plaintiffs*

13